18-2141-cr
*United States of America v. Smith*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2019

Argued: October 11, 2019     Decided: December 23, 2019

Docket No. 18-2141-cr

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

SAMMY SMITH,

*Defendant-Appellant.*

B e f o r e:

LYNCH, LOHIER and SULLIVAN, *Circuit Judges.*

Defendant-Appellant Sammy Smith appeals from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*), sentencing him to two months' imprisonment for attempting to export defense articles without a license in violation of the Arms Export Control Act of 1976, 22 U.S.C. § 2778, and its implementing regulations. Smith argues that the statutory

and regulatory scheme under which he was convicted infringes on protected speech in a manner that is substantially overbroad, in violation of the First Amendment. Because Smith challenges aspects of the statute and regulations that are not the basis for his conviction, he lacks Article III standing to bring an overbreadth claim. The judgment of the district court is therefore AFFIRMED.

———————

ANDREW D. GRUBIN, Assistant United States Attorney, *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, New York, NY (Kevin Trowel, Assistant United States Attorney, *on the brief*) *for Appellee.*

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY *for Defendant-Appellant.*

———————

GERARD E. LYNCH, *Circuit Judge*:

This case concerns a criminal defendant's facial First Amendment challenge to a federal statutory and regulatory scheme that controls the export and import of "defense articles" such as weapons. The Defendant-Appellant, Sammy Smith, pled guilty in the United States District Court for the Eastern District of New York (Jack B. Weinstein, *J.*) to a charge of attempted export of defense articles without a license, after federal agents at John F. Kennedy International Airport, on two separate occasions, discovered handgun parts in luggage he had checked in connection with outgoing international flights. Smith

argues that the statutory and regulatory scheme under which he was convicted infringes on protected speech in a manner that is substantially overbroad, in violation of the First Amendment. We conclude that the statute and regulations are constitutional as applied to Smith and that Smith lacks standing to bring a facial overbreadth challenge. We therefore AFFIRM the judgment.

## BACKGROUND

### I. Statutory and Regulatory Background

The Arms Export Control Act of 1976 ("AECA"), 22 U.S.C. §§ 2751, *et. seq.*, provides that "no defense articles or defense services . . . may be exported or imported without a license for such export or import." 22 U.S.C. § 2778(b)(2). It also provides for criminal penalties up to a $1,000,000 fine and 20 years in prison for "[a]ny person who willfully violates any provision of this section . . . or any rule or regulation issued under this section." *Id*. § 2778(c). The AECA authorizes the President "to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List." *Id*. § 2778(a)(1).

The President, by executive order, has delegated to the U.S. Department of State the authority to regulate under the AECA and to designate defense "articles" and "services" for inclusion on the United States Munitions List ("USML"). *See* Exec. Order No. 13,637, § 1(n)(i), 78 Fed. Reg. 16,129 (Mar. 8, 2013). The State Department's Directorate of Defense Trade Controls has accordingly promulgated regulations known as the International Traffic in Arms Regulations ("ITAR"). *See* 22 C.F.R. pts. 120-130 (2019). The ITAR make it unlawful to, *inter alia*, "export or attempt to export from the United States any defense article or technical data or to furnish or attempt to furnish any defense service for which a license or written approval is required" without such a license. *Id*. § 127.1(a)(1).

The ITAR's definition of "export" includes the "actual shipment or transmission out of the United States, including the sending or taking of a defense article out of the United States in any manner." *Id*. § 120.17(a)(1). The ITAR also provide that a "deemed export," defined as "[r]eleasing or otherwise transferring technical data to a foreign person in the United States," constitutes an "export." *Id*. § 120.17(a)(2).

The ITAR also include, at 22 C.F.R. § 121.1, the USML, which enumerates the "articles, services, and related technical data [that] are designated as defense

4

articles or defense services" for purposes of the AECA and ITAR. *Id*. § 121.1(a).

The USML organizes the designated items into twenty-one categories,

encompassing various forms of weaponry, ammunition, explosives, military-type

equipment and vessels, toxicological agents, classified data, and more. Each of

the twenty-one categories includes as a designated item "[t]echnical data" and

"defense services" that are "directly related to the defense articles" listed in that

category. *See, e.g., id*. §§ 121.1(I)(i), (II)(k), (III)(e), (IV)(i), (V)(j), (VI)(g), (VII)(h).

The ITAR define "technical data" to include "[i]nformation . . . required for the

design, development, production, manufacture, assembly, operation, repair,

testing, maintenance or modification of defense articles." *Id*. § 120.10(a)(1).

## II. Factual Background

On June 3, 2016, Smith arrived at John F. Kennedy International Airport

("JFK Airport") with a ticket for an Air Berlin flight from New York to Istanbul,

Turkey. Smith was selected for a pre-boarding inspection and interview with

Customs and Border Protection ("CBP") officers. In the interview, Smith

voluntarily informed CBP officers that his checked suitcase contained gun parts.

CBP officers retrieved Smith's suitcase from the airplane, searched it, and

discovered a hard-shell case containing fourteen Glock handgun upper receivers

(or "slides"), barrels, and recoil springs, and three Glock extractor depressors.

CBP officers informed Smith that he could not transport handgun parts out of the United States without an export license, which Smith confirmed that he did not have. Smith stated that he planned to have the gun parts engraved by Turkish craftspeople upon his arrival, and then to sell the engraved parts in Turkey. CBP officers seized the gun parts but permitted Smith to board the flight to Istanbul. Smith subsequently corresponded with CBP officials by phone and email. During those conversations, he requested the return of the gun parts and inquired about the process for obtaining an export license. In a July 14, 2016, letter to Smith, CBP stated that the gun parts had been seized due to Smith's violation of 22 U.S.C. § 2778 (the AECA) and 22 C.F.R. §§ 127.1,[1] 127.2,[2] and

---

[1] As described above, § 127.1 provides that it is unlawful to, *inter alia*, "export or attempt to export" or "import or attempt to import" "any defense article or technical data . . . for which a license or written approval is required" without "first obtaining the required license or other written approval."

[2] Section 127.2 provides that it is unlawful to "use or attempt to use" export or import documentation that contains a false statement or a misrepresentation or omission of a material fact. Because Smith admitted that he did not have an export license, it is not clear how this provision is relevant to his conduct. The provision was not cited in Smith's eventual indictment or the subsequent criminal proceedings.

123.22(b).[3]

On July 23, 2016, Smith traveled by train from New York to Cleveland, Ohio. In Cleveland, he boarded a flight to JFK Airport, where he planned to connect to a flight to Amsterdam, and from there to fly to Istanbul. During his layover at JFK Airport, CBP officers subjected Smith's checked suitcase to a sniff test by a CBP canine trained to detect guns. When the dog alerted to the presence of guns, officers searched Smith's bag and again found gun parts: twenty Glock upper receivers, barrels, and recoil springs, five Lone Wolf slides and barrels, and one Beretta PX4 pistol barrel. CBP officers seized the gun parts and questioned Smith, who stated that he was under the impression that the export license requirement applied only to international travel that originated in New York. Smith was permitted to board his connecting flight to Amsterdam, without the gun parts.

Federal agents arrested Smith on January 24, 2017. On April 21, 2017, a grand jury in the Eastern District of New York indicted him for the attempted export of firearms components designated as defense articles on the USML. The

---

[3] Section 123.22(b) sets forth requirements for the electronic filing of "export information" in connection with exports pursuant to a license or exemption.

Indictment identified the gun parts that Smith had attempted to export as items listed in Category I of the USML, with the upper receivers and barrels designated under subsection (g) of that category and the recoil springs designated under subsection (h).[4]

In a post-arrest interview and in proceedings before the district court, Smith explained that he had acted on the advice of a friend. According to Smith, the friend had purchased the gun parts on the internet and had convinced Smith to transport them to Turkey on the promise that they would split the proceeds from their eventual sale. Smith also claimed that the same friend had advised him, erroneously, that Smith could circumvent the export licensing requirement if his international trip originated outside of New York. Smith stated that at the time of his attempts to transport gun parts to Turkey, his judgment had been negatively affected by his habitual cocaine use, and that he had since sought

---

[4] Category I of the USML is titled "Firearms, Close Assault Weapons and Combat Shotguns." *See* 22 C.F.R. § 121.1(I). The subsections of Category I enumerate items designated as "defense articles" under this category. Subsection (g) lists "[b]arrels, cylinders, receivers (frames) or complete breech mechanisms" for nonautomatic, semi-automatic, and fully automatic firearms to caliber .50 inclusive; firearms and other weapons with special military application; and combat shotguns. *Id*. Subsection (h) lists "[c]omponents, parts, accessories and attachments" for such weapons. *Id*.

treatment for his drug habit and maintained an extended period of sobriety.

On September 25, 2017, Smith moved to dismiss the indictment, arguing (as relevant here) that the AECA was facially overbroad because it restricted constitutionally protected speech. On October 6, 2017, Smith entered a guilty plea on the understanding that the district court would rule on Smith's pending motion to dismiss prior to accepting the plea. The district court denied the motion to dismiss on December 13, 2017. In disposing of Smith's First Amendment overbreadth claim, the court stated that the AECA "at most, infringes on free speech at its margins, relative to the '[statute's] plainly legitimate sweep.'" App'x at 96 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)).

At a sentencing hearing on July 9, 2018, the district court accepted as credible Smith's claims that he had acted on a friend's advice and had been affected by cocaine addiction. Smith reiterated to the district court that he had planned to have the gun parts engraved by Turkish craftspeople in accordance with a Turkish tradition of engraving firearms.[5] The district court found that the

---

[5] Smith has at different times stated that he had planned either to sell the engraved parts in Turkey or to transport them back to the United States for sale here.

engraving explanation was not credible, given that the parts Smith attempted to export were internal gun components that would not be visible if they were used in assembled handguns.

The district court sentenced Smith to 2 months in prison and 6 months of supervised release, a sentence well below the advisory Sentencing Guidelines range of 51 to 63 months in prison.[6] On appeal, Smith argues that the district court erroneously denied his motion to dismiss the indictment. Smith has completed his term of imprisonment and his term of supervised release.

## DISCUSSION

Smith argues that the AECA and ITAR are overbroad, in violation of the First Amendment, because they restrict substantial amounts of protected speech. He also contends that the AECA and ITAR violate the First Amendment because they operate as a prior restraint on speech and because they amount to a content-based restriction of speech. For the reasons explained below, we find that the

---

[6] The district court had delayed Smith's sentencing, at Smith's request, pending the Supreme Court's decision in *Class v. United States*, 138 S. Ct. 798 (2018). In *Class*, decided on February 21, 2018, the Supreme Court held that a criminal defendant who enters a guilty plea may appeal his conviction on the ground that the statute of conviction is unconstitutional. *Id*. at 803. Under the rule articulated in *Class*, Smith has the right to bring this appeal, notwithstanding his guilty plea.

AECA and ITAR are constitutional as applied to Smith, that Smith lacks standing to bring a facial overbreadth challenge, and that Smith's other facial First Amendment challenges are without merit.

**I. The AECA and ITAR Are Constitutional as Applied to Smith.**

Smith was convicted of attempting to export, without a license, firearm components that are designated as "defense articles" under the USML, Category I, subsections (g) and (h). *See* 22 C.F.R. §§ 121.1(I)(g), (h). In attempting to export defense articles for which a license is required, Smith engaged in conduct that the ITAR make unlawful. *See id*. § 127.1(a)(1). The criminal prohibition articulated in that regulatory provision implements the AECA's requirement that defense articles not be exported or imported without a license. *See* 22 U.S.C. § 2778(b)(2).

Even assuming, *arguendo*, that some provisions of the AECA and ITAR may be applied in a manner that regulates or restricts speech, neither Smith's conduct, nor the provisions that criminalize it, involve speech or expression. In attempting to fly from the United States to Turkey with gun parts in his checked luggage, Smith attempted an "export" that, if successful, would have entailed the "actual . . . transmission out of the United States" of physical objects. *See* 22 C.F.R. § 120.17(a)(1). Smith was not engaging in speech, nor can his actions be

reasonably construed as "symbolic speech" or "expressive conduct." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567 (1991). Moreover, the specific statutory and regulatory provisions that collectively render Smith's conduct criminal — the proscription of unlicensed exports (and attempted exports) and authorization of criminal penalties in 22 U.S.C. §§ 2778(b)(2), (c), and 22 C.F.R. § 127.1(a)(1); the definition of "export" in  22 C.F.R. § 120.17(a)(1); and the designation of handgun barrels, receivers, and "[c]omponents, parts, accessories and attachments" as "defense articles" in 22 C.F.R. §§ 121.1(I)(g),(h) — do not purport to regulate anything constituting or even resembling expressive conduct. The aspects of the AECA and ITAR that are relevant to Smith's conduct do not implicate the First Amendment at all.

Smith's opening brief acknowledges that the AECA and ITAR "legitimately regulate[] the export of weaponry." Appellant's Br. at 11. He does not claim that his attempt to transport gun parts to Turkey in his checked luggage was expressive in its nature or purpose. By bringing only a facial challenge that takes issue with aspects of the regulations that are unrelated to his indictment and conviction, Smith effectively concedes that the prohibition of his own conduct alone presents no First Amendment issue.

**II. Smith Lacks Standing to Raise His Facial Overbreadth Challenge to the AECA and ITAR.**

Smith contends that the AECA and ITAR are overbroad, in violation of the First Amendment, because they restrict a substantial amount of protected speech. His challenge focuses on the designation of "technical data" as "defense articles" under the USML, entailing that such "technical data" may not be imported or exported without a license. *See* 22 C.F.R. § 121.1. While Smith characterizes his claim as a challenge to the entire statutory and regulatory scheme, the substance of his argument is specific to two regulatory provisions: the definition of "technical data" in 22 C.F.R. § 120.10 and the definition of "export" in 22 C.F.R. § 120.17(a)(2) insofar as it includes a "deemed export" of "technical data." He argues that by defining the terms "technical data" and "export" too broadly, the ITAR restrict the transmission of a broad swath of information and thereby impinge upon protected speech. The record makes clear, however, that Smith was charged with, pled guilty to, and was convicted of the attempted export of "upper receivers and barrels . . . as described in Category I(g) of the USML" and "recoil springs . . . as described in Category I(h) of the USML." App'x at 11. Smith does not specifically challenge any portion of the AECA or ITAR that regulates

13

the import and export of tangible "defense articles" (such as those identified in the Indictment), as opposed to "technical data." He does not challenge any specific provision of the statute, and he challenges only portions of the regulations that are wholly unrelated to the proscription of his conduct.[7]

"Overbreadth challenges are a form of First Amendment challenge and an exception to the general rule against third-party standing." *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006). A party that challenges a statute as overbroad claims that the statute "would violate the First Amendment rights of hypothetical third parties if applied to them." *Id*. Thus, "[a]ll overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court." *Id*.

Under the overbreadth doctrine, "the prudential limitations against third party standing are relaxed, and the litigant may assert the rights of individuals

---

[7] The regulatory provision that defines "export," 22 C.F.R. § 120.17, is relevant to the proscription of Smith's conduct insofar as it defines an "export" as "[a]n actual shipment or transmission out of the United States" in subsection (a)(1). Smith, however, challenges not that aspect of the definition, but rather an alternate meaning of "export" set forth in subsection (a)(2): "[r]eleasing or otherwise transferring technical data to a foreign person in the United States (a 'deemed export')." That alternate definition in subsection (a)(2) is unrelated to the proscription of Smith's conduct, as is 22 C.F.R. § 120.10, the regulatory provision that defines "technical data."

whose interests might be affected by the statute but who are not before the court." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 144 (2d Cir. 2000). Even so, the reviewing court must consider "whether the third party has sufficient injury-in-fact to satisfy the Art[icle] III case-or-controversy requirement." *Sec'y of State of Md. v. Joseph H. Munson, Co.*, 467 U.S. 947, 956 (1984). The overbreadth doctrine "speaks to whose interests a plaintiff suffering Article III injury may represent" but "does not provide a reason to find such injury where none is present or imminently threatened in the first instance." *Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013).

Accordingly, Smith may challenge the AECA and ITAR as unconstitutionally overbroad only if he can establish Article III standing. Three elements comprise the "'irreducible constitutional minimum' of standing": "the individual initiating the suit 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). An injury-in-fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks

15

omitted).

In Smith's case, there is a fundamental misalignment between his alleged injury and his legal claim. Assuming without deciding that his conviction and sentence represent an adequate injury-in-fact to satisfy the first element of constitutional standing, he fails to establish the other two required elements. Smith's conviction and sentence, which follow from the attempted export of gun parts without a license, are traceable to the aspects of the ITAR that regulate the export of handguns and their components, but Smith's legal claim rests instead on separate language that bears no direct relationship to his conduct. Because he challenges the manner in which the AECA and ITAR regulate the transmission of "technical data," he must allege an injury-in-fact that is traceable to the regulation of "technical data"; an injury arising from the regulation of a separate subject by other provisions of the same statutory and regulatory scheme is not "fairly traceable" to the challenged provisions.

For similar reasons, he also fails to establish redressability. A favorable outcome of his challenge would result at most in the invalidation of only the portion of 22 C.F.R. § 120.10 that defines "technical data" and the portion of the definition of "export" in 22 C.F.R. § 120.17(a) regarding a "deemed export" of

16

"technical data." *See* 22 C.F.R. §§ 120.10(a); 120.17(a)(2). Even if Smith were to prevail on the merits of his overbreadth challenge, therefore, a favorable decision would not affect the statutory and regulatory provisions that rendered his conduct criminal, and thus would not redress his injury. A successful overbreadth challenge would leave Smith's conviction and sentence undisturbed.

The overbreadth doctrine's recognition of prudential third-party standing does not compel a less rigorous analysis of constitutional standing. A litigant who challenges a rule of law as overbroad may have constitutional standing even though the rule's application to her is constitutional, but only insofar as her own conduct falls within the ambit of the specific rule of law that she challenges.[8] In

---

[8] Other circuit courts have similarly made this point. *See Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010) ("[I]f [plaintiff] is limited by one provision of an ordinance and makes a facial challenge due to the overbreadth of a different provision, there is no constitutional standing . . . as to the separate provision."); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349-50 (6th Cir. 2007) ("[I]n an appropriate First Amendment overbreadth claim, a plaintiff whose conduct is regulated by a rule of law is permitted to challenge the constitutionality of *that particular rule of law* regardless of the fact that a more circumscribed version of that rule of law could be applied in a constitutional fashion to prohibit the plaintiff's conduct." (emphasis added)); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006) ("A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court *under that provision.*" (emphasis added)).

other words, a person convicted under the AECA and ITAR for exporting (or attempting to export) "technical data" might have constitutional standing to assert the overbreadth claim that Smith makes here, even if her own conduct was not constitutionally protected speech. Smith, however, challenges the breadth of regulatory language that is entirely distinct from that which makes his own conduct unlawful.

In an effort to salvage his standing, Smith argues that the provisions of the ITAR that he challenges are inseverable from both the rest of the ITAR and from the AECA. A successful overbreadth challenge to those provisions, he argues, would necessarily result in the invalidation of the entire statutory and regulatory scheme, thereby nullifying the legal basis for his conviction and redressing his alleged injury. That is plainly incorrect.

"Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984). An "invalid part" of a statute or regulation "may be dropped if what is left is fully operative as a law," absent evidence that "the Legislature would not have enacted those provisions which are within its power, independently of that

18

which is not." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)). The remaining ITAR regulations, including those under which Smith was convicted, would be "fully operative as a law" if the portions that Smith contends could reach protected speech were invalidated. As for the preference of the lawmakers, it is utterly implausible that the State Department, in promulgating the ITAR, would not have prohibited the import or export of handgun parts, or firearms generally, or the many other types of weapons and military equipment designated as "defense articles" in the USML, unless it could also prohibit the transmission of an array of information defined as "technical data." It pushes credulity even further past the breaking point to think that Congress, in delegating to the Executive the authority to designate "items . . . as defense articles and defense services," *see* 22 U.S.C. § 2778(a)(1), implicitly conditioned its delegation not only on the inclusion of "technical data" among the designated items, but also on a sweeping definition of "technical data" that encompassed arguably protected speech.[9] Smith's attempt to establish standing is therefore unavailing.

---

[9] The AECA uses the term "technical data" in provisions related to the President's authority to authorize exemptions for foreign countries from the otherwise applicable licensing requirements, but does not appear to require that the implementing regulations define "defense articles" and "defense services" to include "technical data" for purposes of the USML. *See* 22 U.S.C. §§ 2778(f)(2)(A),

Because Smith cannot establish constitutional standing to assert an overbreadth challenge to the AECA and ITAR's regulation of "technical data," we find it unnecessary to consider the merits of that claim.[10]

### III. Smith Cannot Establish That the AECA and ITAR Are Otherwise Facially Unconstitutional.

Smith's opening brief asserts that the AECA and ITAR violate the First Amendment because they impose a prior restraint on speech and because they

---

(f)(2)(B), (j)(4)(A). The AECA defines the terms "defense article" and "defense service" for purposes of the statute without reference to "technical data." *Id.* §§ 2794(3), (4). The statute that preceded (and was replaced by) the AECA authorized the President to control "the export and import of arms, ammunition, and implements of war, including technical data relating thereto," and "to designate those articles which shall be considered as arms, ammunition, and implements of war, including technical data relating thereto." 22 U.S.C. § 1934(a) (repealed 1976). Therefore, while the ITAR appear to be consistent with prior and related practices insofar as they regulate "technical data" relating to "defense articles," it does not appear that Congress expressly required the inclusion of "technical data" among the items that may not be imported or exported without a license, let alone that such inclusion was a *sine qua non* of the adoption of the AECA.

[10] Other courts that have considered this question have consistently found that the statute and regulations challenged by Smith are not overbroad. *See United States v. Chi Mak*, 683 F.3d 1126, 1136 (9th Cir. 2012); *Stagg P.C. v. U.S. Dep't of State*, 354 F. Supp. 3d 448, 469-70 (S.D.N.Y. 2019); *Bernstein v. U.S. Dep't of State*, 945 F. Supp. 1279, 1294-95 (N.D. Cal. 1996); *Karn v. U.S. Dep't of State*, 925 F. Supp. 1, 12-13 (D.D.C. 1996). Because Smith lacks constitutional standing to raise this claim, however, we express no opinion on the matter.

impose content-based restrictions on speech without adequate governmental justifications. Smith seems to invoke these First Amendment doctrines in support of his overbreadth claim, arguing that the AECA and ITAR restrict protected speech, to an extent that renders them overbroad, by imposing a prior restraint and restricting speech on the basis of content. The government, in its brief, construes these arguments as separate lines of attack from the overbreadth claim.

Because we understand Smith's opening brief to assert all of the First Amendment arguments therein in service of an overbreadth claim, which he lacks standing to raise, we do not find it necessary to address his other arguments. Moreover, to the extent that Smith invokes these other doctrines as distinct grounds for the alleged unconstitutionality of the statutory and regulatory scheme, the constitutional standing analysis that precludes his overbreadth claim applies with equal force to his other First Amendment arguments. Because his arguments challenge only aspects of the statutory and regulatory scheme that pertain to the transmission of "technical data," and that are therefore unrelated to the proscription of his conduct, he does not have standing to raise them.

**CONCLUSION**

For the reasons stated above, the district court did not err in denying Smith's motion to dismiss the indictment. We therefore AFFIRM the judgment of conviction.