**IN THE**

# United States Court of Appeals

# For the Second Circuit

————

AUGUST TERM, 2019

SUBMITTED: JUNE 25, 2020
DECIDED: SEPTEMBER 25, 2020

No. 19-3218-CR

UNITED STATES OF AMERICA,

*Appellee*

*v.*

JOHN ORLANDO BROOKER, JR., ZACHARY ADAM GRANT, MICHAEL ROBERT ROSS, JR., GRAYTZ MORRISON, AKA SPACE, AKA SPIZZY, DONALD CHRISTOPHER PERKINS, JR., AKA D.P., SHAWN A. FRANCIS, AKA S.O., ALAN HORICK, GREGORY FLAKE, AKA TONE, THOMAS LUZADER, JERIMIAH JOEL DURFEE, AKA J-FRO, LAMAR LARRY JOHNSON, AKA BLUB, WILLIAM COREY WARNER, DANIEL F. WEBSTER, JR., AKA D2, MILES EDWARDS, JULIAN VICTOR DATIL-RODRIGUEZ, BRIAN KEITH DOMINGO, AKA BRAWLI, AKA GHOST FACE, LEROY J. RICE, AKA KINFOLK, DANIEL LUGO, AKA FAT ANTHONY, NOEL DELAROSA, EVELIO BARO, MOISES ORTIZ, ANTOINE MATHIS,

*Defendants*,

JEREMY D. ZULLO,

*Defendant-Appellant.*

————

Appeal from the United States District Court
for the District of Vermont
No. 1:09-cr-00064-gwc-2 – Crawford, *Chief Judge*.

————

Before: WINTER, CALABRESI, AND CHIN, *Circuit Judges*.

————

About ten years ago Jeremy Zullo was sentenced to a mandatory minimum fifteen-years' imprisonment. After the passage of the First Step Act of 2018, he sought compassionate release in the district court, arguing that his sentence was unjustly long, that he has shown exemplary rehabilitation, that he maintains close relationships with his family, that he was a teenager at the time of his offense, and that the government breached his plea agreement. The district court held that, despite the First Step Act's changes to compassionate release, *see* 18 U.S.C. § 3852(c)(1)(A), the previously enacted United States Sentencing Guideline § 1B1.13, Application Note 1(D) remained good law and limited the applicable circumstances the court could consider, without input from the Bureau of Prisons, to matters of poor health, old age, and family care needs. We disagree and hold that, absent updated guidance from the Sentencing Commission, the First Step Act freed district courts to consider any potentially extraordinary and compelling reasons that a defendant might raise for compassionate release. We therefore VACATE and REMAND for further proceedings.

————————————————

GREGORY L. WAPLES (Eugenia A.P. Cowles, *on the brief*), Assistant United States Attorneys, *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT, *in support of Appellee.*

PETER J. TOMAO, ESQ., Garden City, NY, *in support of Defendant-Appellant.*

_____

CALABRESI, *Circuit Judge*:

The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act"), was simultaneously monumental and incremental. Monumental in that its changes to sentencing calculations, mandatory minimums, good behavior credits and other parts of our criminal laws led to the release of thousands of imprisoned people whom Congress and the Executive believed did not need to be incarcerated. Incremental, in that, rather than mandating more lenient outcomes, it often favored giving discretion to an appropriate decisionmaker to consider leniency.

This case reflects that dichotomy. The First Step Act provision we analyze overturned over 30 years of history, but at the same time it often did no more than shift discretion from the Bureau of Prisons ("BOP") to the courts. We must today decide whether the First Step Act empowered district courts evaluating motions for compassionate release to consider *any* extraordinary and compelling reason for release that a defendant might raise, or whether courts remain bound by U.S. Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") § 1B1.13 Application Note 1(D) ("Application Note 1(D)"), which makes the Bureau of Prisons the sole

arbiter of whether most reasons qualify as extraordinary and compelling. Because we hold that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act, we vacate and remand the district court's contrary decision.

## BACKGROUND

**A. Zullo's Offense, Conviction, and Sentencing**

Jeremy Zullo became involved in serious crimes at a young age. He joined the drug trafficking conspiracy that would land him in prison at 17; he was indicted at 20; and he was convicted and sentenced at 22. On May 26, 2010, Zullo pleaded guilty to conspiring to traffic marijuana and more than five kilograms of cocaine, possessing a gun in furtherance of a drug crime, and using criminally derived property in a transaction valued at more than $10,000. These crimes required the district court to sentence Zullo to, at a minimum, separate 10-year and 5-year mandatory minimum sentences.

At that time, however, we had held that the sentencing court had discretion to run these sentences concurrently. *See United States v. Williams*, 558 F.3d 166, 176 (2d Cir. 2009), *abrogated by Abbott v. United States*, 562 U.S. 8 (2010). And at Zullo's sentencing that is exactly what happened. The district court heard how Zullo had no criminal background before this set of crimes, and how, even while released pre-trial, he had seemingly begun to turn his life around. It then remarked,

[y]ou know, a sentence like this it's difficult for me to sentence somebody like you to 10 years in prison frankly. You know, I look back at the number of people I've sentenced to 10 years or more. Most

4

of them have been pretty experienced criminals with a lot of past criminal behavior. So you are a little bit unique in that sense. So I'm not going to give you much more than the 120 months [mandatory minimum] because I don't, because I frankly think 120 months is enough.

App'x 113. True to its word, the district court sentenced Zullo to 126 months imprisonment. It ran the five-year mandatory minimum required for Zullo's gun conviction concurrently with the ten-year minimum required for his drug trafficking conviction.

The government appealed. While that appeal was pending the Supreme Court decided *Abbott*, holding that mandatory sentences under 18 U.S.C. § 924(c), like the one Zullo received, must run consecutively to any other mandatory minimum sentence. 562 U.S. at 13. Recognizing that Zullo's sentence was now contrary to law, we vacated and remanded for resentencing. *See United States v. Brooker*, No. 10-4764-cr, 2011 WL 11068864, at *1 (2d Cir. Dec. 22, 2011). On remand, the district court, repeating its belief that the required now-15-year sentence was excessive, imposed that sentence. Zullo's conviction and sentence were then affirmed on direct appeal and on habeas review. *United States v. Zullo*, 581 F. App'x 70 (2014) (direct appeal); *United States v. Zullo*, No. 1:09-CR-00064-JGM-2, 2015 WL 6554783 (D. Vt. Oct. 29, 2015) (habeas review).

**B. A Brief History of Statutory Compassionate Release**

The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984. *See* Pub. L.

5

No. 98-473, 98 Stat. 1837, 1998-1999 (1984).[1] That statute created the substantive standard that we still apply: whether "extraordinary and compelling reasons" exist for compassionate release. *Id.* (codified at 18 U.S.C. § 3582(c)(1)(A)).

That original statute, unlike the current law, gave BOP exclusive power over all avenues of compassionate release. For over 30 years any motion for compassionate release had to be made by the BOP Director. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). No matter what other changes Congress made to the compassionate release statute over the years, the BOP's absolute control over this mechanism for lenity remained. *See, e.g.*, Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 § 70002, 108 Stat. 1796, 1984-85 (codified at 18 U.S.C. § 3582(c)(1)(A)(ii)) (providing for the release, upon BOP motion, of some imprisoned persons at least 70 years of age who have served at least 30 years in prison).

BOP used this power sparingly, to say the least. A 2013 report from the Office of the Inspector General revealed that, on average, only 24 incarcerated people per year were released on BOP motion. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf. That report concluded that BOP did "not properly manage the compassionate release

---

[1] Before 1984 compassionate release existed alongside the now-abolished federal parole system, although it appears to have been used in much the same fashion as it is today. *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 100 (2019) (detailing this history).

program," that its "implementation of the program . . . [was] inconsistent and result[ed] in ad hoc decision making," and that it "ha[d] no timeliness standards for reviewing … requests." *Id.* at 11. These failures were not without consequence. Of the 208 people whose release requests were approved by *both* a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *Id.*

As a result of this report and other criticisms, BOP revamped portions of its compassionate release procedures. This included expanding the population it would consider eligible for release to people over the age of 65 who had served a significant portion of their sentences. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20160217/IG.pdf. And, in the first 13 months after these changes, 83 people were granted compassionate release. *Id.* But these 83 were still only a small part of a potential release pool of over 2000 people who met the BOP's revised criteria of being over 65 and having served at least half of their sentence. *Id.*

The Sentencing Commission has also played a role in compassionate release, though its work has been constrained by the BOP's absolute gatekeeping authority. 28 U.S.C. § 994(t) requires the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." And 28 U.S.C. § 994(a)(2)(C) requires the Commission to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing …

including … the sentence modification provisions set forth in section[] … 3582(c)." The above-mentioned section 994 was passed in 1984, but it was not until 2006 that the Commission finally acted on this mandate and issued a new policy statement, Guideline § 1B1.13.

Despite the seeming statutory command, this policy statement did not define "extraordinary and compelling reasons." Instead, it stated in an application note only that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of [the policy statement]." U.S.S.G. § 1B1.13 n.1(A) (U.S. Sentencing Comm'n 2006). The next year, however, the Commission updated that Guideline to explain that extraordinary and compelling reasons for a sentence reduction exist if "the defendant is suffering from a terminal illness," from significant decline related to the aging process that would make him unable to care for himself within a prison, or upon "the death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children." *Id.* § 1B1.13 n.1(A)(i)-(iii) (U.S. Sentencing Comm'n 2007). This 2007 guideline amendment also introduced what has come to be known as the catch-all clause: compassionate release is warranted if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the other parts of the Guideline]." *Id.* § 1B1.13 n.1(A)(iv) (U.S. Sentencing Comm'n 2007).

By 2018, when the latest amendment to section 1B1.13 was made, the Sentencing Commission had expanded its own definition of extraordinary and

compelling circumstances more broadly to cover events relating to the traditional categories of the imprisoned person's health, age, or family circumstances, and to clarify that such circumstances did not have to be unforeseen at the time of sentencing. *See id.* § 1B1.13 nn.1, 2 (U.S. Sentencing Comm'n 2018). But, importantly for this case, it had maintained, nearly word-for-word, the catch-all provision allowing for other unidentified extraordinary and compelling reasons "[a]s determined by the Director of the Bureau of Prisons." *Id.* § 1B1.13 n.1(D).

The current version of the Guideline also includes an application note, added in 2016, titled "Motion by the Director of the Bureau of Prisons." *Id.* § 1B1.13 n.4. That note states that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons," and goes on to "encourage[] the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1." *Id.* This 2016 addition, however, also explains that, in the Commission's view, "[t]he court is in a unique position to determine whether the circumstances [in the motion] warrant a reduction … ." *Id.*

## C. The First Step Act

It was against this backdrop that Congress passed the First Step Act. The First Step Act, among numerous other reforms, made the first major changes to compassionate release since its beginnings in 1984. Chief among these changes was the removal of the BOP as the sole arbiter of compassionate release motions. While BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, under Congress'

mandate a defendant now has recourse if BOP either declines to support or fails to act on that defendant's motion. As the Act states, a defendant may go to court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier …." 18 U.S.C. § 3582(c)(1)(A).

One co-sponsor of the bill described this provision as both "expand[ing]" and "expedit[ing]" compassionate release. 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin). Another representative stated that the First Step Act was "improving application of compassionate release …." 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018) (statement of Rep. Jerrold Nadler). Sentiments like these were apparently so widely shared that Congress titled this portion of the First Step Act, "Increasing the Use and Transparency of Compassionate Release." *See* P.L. 115-391 § 603(b), 132 Stat. 5194, 5239.

This change—though seemingly only procedural in its modification of the decisionmaker—quickly resulted in significant substantive consequences. In 2018 only 34 people received compassionate release sentence reductions. *See* U.S Dep't of Just., *Department Of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System* (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and. After the First Step Act became law in December 2018, BOP reports that over 1000 motions for compassionate release or sentence reduction have been granted. Federal Bureau of Prisons, *First*

*Step Act*, https://www.bop.gov/inmates/fsa/ (last visited July 27, 2020). What Congress seems to have wanted, in fact occurred.

\* \* \*

It is in this context that the instant case arises. For, despite the material changes Congress made to compassionate release procedures in the First Step Act, the Sentencing Commission has not updated its policy statement on compassionate release. Thus, section 1B1.13 still refers in multiple places to BOP having the exclusive authority to bring a compassionate release motion before the court. *See* U.S.S.G. § 1B1.13 & n.4. And no update to that Guideline appears forthcoming because, as the Government notes here, the Commission currently lacks a quorum of voting members.

**D. Procedural History**

On July 25, 2019, Zullo, in accordance with the language of the First Step Act, sought compassionate release and, having exhausted his administrative remedies, moved for release or a sentence reduction in the district court. A few days later, on July 31, Zullo asked the lower court to amend his motion to add the argument that the government had violated his plea agreement.[2]

---

[2] While his motions were pending, someone named Maria Houston sought leave to file an amicus brief. Her motion was a single paragraph long, and did not identify her profession, expertise, or why she had an interest in the case. It stated only that she wished to present data that would show Zullo was a lower recidivism risk than the government alleged and to identify social issues in criminal justice reform relevant to the case.

11

On September 23, 2019, the district court denied Zullo's motion for compassionate release and his motion to amend.[3] It did so relying on Guideline § 1B1.13, which seemingly still required a motion by the BOP. Zullo timely appealed a week later.

## DISCUSSION

### A. U.S.S.G. § 1B1.13 Application Note 1(D) and the First Step Act

And so we turn to the question at the heart of this case: whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D). Because this is a legal question, we review the district court's decision *de novo*. *See United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020).

This question has split district courts across the country. A majority has concluded that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances. *See, e.g.*, *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (reaching this conclusion and collecting similar cases). A sizable minority, including the district court below, has reached the opposite conclusion, holding that Application Note 1(D)'s language continues to preclude court action, absent a motion by the BOP. *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting cases).

---

[3] It also denied Houston's motion to file an amicus brief.

12

We agree with the majority position, and so vacate and remand the district court's decision.

1. *The First Step Act and Application Note 1(D)'s Text*

As with most cases of statutory interpretation, we begin with the text. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1737 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit."). 18 U.S.C. § 3582(c)(1)(A)(i), after being amended by the First Step Act, currently reads in relevant part:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if [the court] finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …* . (emphasis added).

As we have described, the major difference between this statute and its prior incarnations is that an imprisoned person moving for compassionate release can now bring a claim before the courts even if the BOP opposes the claim. Congress clearly did not view this—a break with over 30 years of procedure—as a minor or inconsequential change. Congresspersons called it "expand[ing]," "expedit[ing]," and "improving" compassionate release.[4] 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin); 164 Cong. Rec. H10346, H10362 (Dec. 20, 2018) (statement of Rep. Jerrold Nadler).

Significantly, the statute's text, while it requires courts when adjudicating compassionate release motions to consider the Guidelines, requires such courts to consider only "applicable" guidelines. 18 U.S.C. § 3582(c)(1)(A). It follows that the question before us is whether Guideline § 1B1.13, and specifically Application Note 1(D), remains "applicable" after the changes made in the First Step Act.

Turning to the text of Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable. The very first words of the Guideline are "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. And this is precisely the requirement that the First Step Act expressly removed. *See* 18 U.S.C. § 3582(c)(1)(A). We could, therefore, read the Guideline as in effect abolished. And that would settle the case before us, absent an unlikely

---

[4] These statements are reflected in the bill's title: "Increasing the use and transparency of compassionate release." P.L. 115-391 § 603(b), 132 Stat. 5194, 5239. And the Supreme Court has recognized that titles can be "especially valuable" as "devices to resolve 'doubt about the meaning of a statute.'" *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J. concurring) (quoting *Porter v. Nussle,* 534 U.S. 516, 527–528 (2002)).

severability of the Application Note. *See infra* 16-18. But we prefer to save as much of the Guideline language and policy as possible. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (noting that courts' usual practice is to avoid the creation of surplusage, instead attempting "to 'give effect, if possible, to every clause and word of a statute.'"). As a result, though motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made.

In doing so, we look also to Application Note 4, which says that "[a] reduction *under this policy statement* may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13, n.4 (emphasis added). And we conclude that after the First Step Act, this language must be read not as a description of the former statute's requirements, but as defining the motions to which the policy statement applies. A sentence reduction brought about not "upon motion by the Director of the Bureau of Prisons" is not a reduction "under this policy statement." *Id.* In other words, if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it. Because Guideline § 1B1.13 is not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.

This reading not only saves as much of the existing Guideline as is possible, given the First Step Act, but it also aligns with Congress' intent in passing that Act. After watching decades of the BOP Director's failure to bring any significant

number of compassionate release motions before the courts, Congress allowed people seeking compassionate release to avoid BOP if BOP rejects their motions or fails to act on them within a short time period, only 30 days. *See* 18 U.S.C. § 3582(c)(1)(A) (allowing for the filing of a motion with the court when administrative options are exhausted or 30 days pass, "whichever is earlier"). When the BOP fails to act, Congress made the courts the decision maker as to compassionate release. *Id.*

2. *Severability*

The government seeks to retain BOP power to define extraordinary and compelling circumstances by urging us to sever the explicitly conflicting portions of the Guideline from Application Note 1(D). It argues that Application Note 1(D) can remain in force because Congress made only procedural changes to compassionate release, and the statutory requirement that the Commission promulgate a definition of "extraordinary and compelling reasons" went unchanged. *See* 28 U.S.C. § 994(t). But even if we assume, as the government does, that traditional severability principles apply to the Guidelines, the government's argument fails.

First, because we do not abrogate Guideline § 1B1.13—but only read its applicability to be limited to cases in which the BOP has made a motion— severability does not come up. There is nothing to sever. Neither the Guideline nor its application notes have been eliminated. Second, even were we to abrogate Guideline § 1B1.13, the government's severability argument would be

16

unsuccessful, for as we have explained, Application Note 4's text places motions not made by the BOP Director outside of section 1B1.13's scope.

More generally, severability, as the government recognizes, is largely a question of legislative intent. *United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019). "An 'invalid part' of a statute or regulation 'may be dropped if what is left is fully operative as a law,' absent evidence that 'the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" *Id.* (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984)). Here, the long history of the compassionate release provisions, the statements of Congresspersons, including a First Step Act co-sponsor, and the text of both the First Step Act and the Guideline, make the intent of everyone involved clear. When the BOP does not timely act or administrative options are exhausted, "whichever is earlier," discretion to decide compassionate release motions is to be moved from the BOP Director to the courts. 18 U.S.C. § 3583(c)(1)(A). Significantly, even before passage of the First Step Act, the Sentencing Commission, while it "encourage[d]" the Director to file more compassionate release motions, believed that, "[t]he *court* is in a unique position to determine whether the circumstances warrant a reduction…." U.S.S.G. § 1B1.13, n. 4 (emphasis added).

The government presents nothing from the legislative history of either Guideline § 1B1.13 or the First Step Act suggesting an alternative intent. Given this clear intention, we see no reason to believe that Congress would also wish for BOP to retain a significant rein on the courts' discretion through Application Note 1(D) when the BOP had made no motion.

For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

**B. Zullo's Motion**

The government makes two alternative arguments in the instant case. First, it argues that even if Application Note 1(D) no longer applies and the district court has discretion to consider all possible reasons for compassionate release, remand is unnecessary here because the district court did exercise discretion in denying Zullo's motion. Second, it argues that, regardless of whether the district court exercised discretion, a remand is not needed because any district court granting a compassionate release motion on the facts before us would necessarily abuse its discretion. We reject both arguments.

The district court's order did not use the language of discretion. It said that it "reject[ed] Zullo's argument that the amendment of 18 U.S.C. § 3852(c)(l)(A) removing the requirement of a BOP motion also removed the substantive effect of [Guideline] § 1B1.13." App'x 215. The court then quoted Application Note 1(D), including the language that "other reasons" for compassionate release applied only "[a]s determined by the Director of the Bureau of Prisons." App'x 215-16. It concluded by stating that "[t]he court denies defendant's motion because his primary complaint that his sentence was too long in the first place *cannot qualify* as an extraordinary and compelling circumstance." App'x 216 (emphasis added).

This is the language of a court applying a rule that constrains it. It is not the language of discretion.

Nor can we say, as a matter of law, that a court would abuse its discretion by granting someone compassionate release on this record. It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. *Id.* Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad. *See United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc) (noting a district court's "very wide latitude" in sentencing). The only statutory limit on what a court may consider to be extraordinary and compelling[5] is that "[r]ehabilitation … *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added).

In the instant case, Zullo does not rely *solely* on his (apparently extensive) rehabilitation. Zullo's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction. Indeed, Congress seemingly contemplated that

---

[5] Because Application Note 1(D) does not bind district courts, they are similarly not bound by BOP's updated guidance on what counts as an extraordinary and compelling reason. *See* Federal Bureau of Prisons, Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence (2019) available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The government has not identified, and we have not found, any statute, Guideline, or other document beyond Application Note 1(D) that would require courts to defer to the BOP on this question.

courts might consider such circumstances when it passed the original compassionate release statute in 1984. *See* S. Rep. No. 98-225, at 55-56 (1984) (noting that reduction may be appropriate when "other extraordinary and compelling circumstances justify a reduction of an *unusually long* sentence" (emphasis added)); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at \*6-\*7 (D. Utah Feb. 18, 2020) (further discussing this history and collecting cases where district courts have reduced sentences in part because they were overly long).

Moreover, these arguments may also interact with the present coronavirus pandemic, which courts around the country, including in this circuit, have used as a justification for granting some sentence reduction motions. *See, e.g.*, *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at \*6 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release because of the risk of Covid-19); *United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at \*4 (D. Conn. Apr. 2, 2020) (same); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at \*12 (E.D. Pa. Apr. 1, 2020) (same).

We list these possibilities not to indicate that Zullo should be granted compassionate release, or even to suggest that they necessarily apply—we state no opinion either way on these questions. We merely believe that the consideration of these factors and of their possible relevance, whether in isolation or combination, is best left to the sound discretion of the trial court in the first instance. We therefore vacate and remand to allow the district court to consider

the possible relevance of these and any other factors, and then to exercise the discretion that the First Step Act gives to it.[6]

**CONCLUSION**

We **VACATE** the district court's decision and **REMAND** for further proceedings not inconsistent with this opinion.

---

[6] Because we vacate and remand the district court's decision, we have no reason to opine on whether it abused its discretion by denying Zullo's attempted amendment. As we have previously said, "our vacation … le[aves] the district court free to change its prior ruling on [a] matter, for until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification." *United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991).

We do note, however, that Houston's attempted appeal of the denial of a motion to file an amicus brief is beyond our jurisdiction. *See Boston & Providence R.R. Stockholders Dev. Grp. v. Smith*, 333 F.2d 651, 652 (2d Cir. 1964) ("A denial of a motion to intervene as amicus curiae is not appealable.").