# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2021

Lyle W. Cayce
Clerk

No. 20-40543

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

FRANCESK SHKAMBI,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CR-193-5

Before HO, OLDHAM, and WILSON, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

The question presented is whether the U.S. Sentencing Commission's compassionate-release policy statement binds district courts in considering prisoners' motions under the First Step Act ("FSA"). The district court said yes and dismissed Francesk Shkambi's motion for lack of jurisdiction. That was wrong for two reasons. First, the district court did have jurisdiction. And second, the policy statement is inapplicable. We reverse and remand.

No. 20-40543

I.

On May 7, 2020, Shkambi submitted a request for compassionate release to his warden at FCI Elkton. Shkambi cited his concerns over COVID-19. The Bureau of Prisons ("BOP") denied the request in a written response dated May 11, 2020. With his administrative remedies thus exhausted, Shkambi filed the same request for relief in the federal district court. He filed it as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

In his § 3582 motion, Shkambi referred to FCI Elkton as "a cauldron of disease and death." He reported that "[o]ne in four inmates at FCI Elkton ha[s] been infected with COVID-19." Shkambi said he was one such inmate. After displaying symptoms in April of 2020, Shkambi was taken to the hospital where he tested positive for the virus. Though Shkambi recovered, he expressed fear of reinfection. Specifically, Shkambi expressed fear that taking prednisone—his gout medication—would weaken his immune system and increase his risk of reinfection.

The district court pointed to three provisions of § 3582, which authorize a sentence reduction where: (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The district court noted that Congress didn't define "extraordinary and compelling reasons" and instead delegated that authority to the Sentencing Commission. And it found that Shkambi's extraordinary-and-compelling-reasons argument "fail[ed] because it [wa]s untethered to the Sentencing Commission's binding applicable policy statement in section 1B1.13 of the Sentencing Guidelines." The district court thus concluded that

No. 20-40543

Shkambi could not meet the requirements of § 3582, and it dismissed his motion for lack of jurisdiction.

II.

We start, as always, with jurisdiction. *See Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020) (Oldham, J., concurring) ("Article III jurisdiction is always first."). But the district court did the opposite. Only *after* concluding that Shkambi's claim failed on the merits did the district court address its jurisdiction. The district court stated that "section 3582 provides a limited grant of jurisdiction for a district court to modify a term of imprisonment," and it reasoned that "[b]ecause [the relevant] cases speak in terms of section 3582 as a whole, it follows that section 3582(c)(1)(A), and the limitations within, circumscribe the Court's jurisdiction." The district court said the "rule of finality," which forbids courts from "modify[ing] a term of imprisonment once it has been imposed," justifies viewing this inquiry as jurisdictional. Having concluded that an exception to the rule did not apply (on the merits), the district court purported to dismiss the motion (rather than deny it).

The district court's jurisdictional concerns were misplaced. Section 3582(b) provides that "a judgment of conviction that includes . . . a sentence" generally constitutes "a final judgment." Notwithstanding that final judgment, however, § 3582(c) authorizes the BOP or a prisoner under certain circumstances to file a post-judgment "motion" for modification of a sentence. It is plain from the text of § 3582 that such a "motion" shall be filed—as Shkambi's was—in the same docket that contains the prisoner's final judgment. In that sense, a § 3582 motion is no different than a postconviction motion under 28 U.S.C. § 2255. The latter motion is filed and denied in our district courts every day. And no one would ever say that an unsuccessful § 2255 motion should be dismissed for lack of jurisdiction. It's

just denied on the merits—just as Shkambi's § 3582 motion should have been.

The district court took the contrary view because § 3582 imposes statutory limits on sentence modifications. It's true that § 3582 does not authorize a district court to modify a sentence based on caprice or unbridled discretion. It's also irrelevant. All sorts of federal statutes impose legal limits on district courts. (Again, § 2255 is a good example; it sharply limits the circumstances for granting postconviction relief.) But not all legal limits are *jurisdictional* ones. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848 (2019).

The district court plainly had jurisdiction over Shkambi's § 3582 motion: Shkambi properly filed it in a court that had the power to grant it. Then the district court exercised that jurisdiction by considering the merits of Shkambi's request. The district court got to the end and found Shkambi's motion meritless. But that does not mean the district court suddenly lost the jurisdiction it previously exercised; it just means that Shkambi's motion failed on the merits. *Cf.* 14AA Charles Alan Wright et al., Federal Practice & Procedure § 3702.4, at 476–79 (4th ed. 2011) (noting that, when a plaintiff in a diversity suit loses on the merits, that does not mean the amount in controversy goes to zero and requires dismissal for lack of jurisdiction).

## III.

We turn then to the merits of Shkambi's § 3582 motion. We begin with the framework of compassionate release in federal courts. Then we turn to the relevant FSA amendment and the quandary giving rise to our question presented.

A.

Compassionate release is not a new remedy. It dates back at least to the Parole Reorganization Act of 1976. The Parole Act provided: "At any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed 1987). The capaciousness of that text authorized the BOP to request (and district courts to grant) reductions for a wide range of reasons.

In 1984, Congress enacted the Sentencing Reform Act. In that act, "Congress abolished federal parole and forbade the federal courts from 'modify[ing] a term of imprisonment once it has been imposed.'" *United States v. Jones*, 980 F.3d 1098, 1103–04 (6th Cir. 2020) (alteration in original) (quoting Pub. L. No. 98-473, Title II, ch. 2, § 212(a), 98 Stat. 1837, 1998 (enacting 18 U.S.C. § 3582(c))). But Congress retained an exception for compassionate-release motions. *See* 18 U.S.C. § 3582(c)(1)(A) (1984) (providing that "the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment" under certain conditions). That exception—like its Parole Act predecessor— "gave [the] BOP exclusive power over all avenues of compassionate release." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).

In the first 34 years following enactment of the Sentencing Reform Act, compassionate release required four things. First, it required a motion from the BOP; without the BOP's request, the prisoner could not obtain relief. Second, it required one of two conditions now listed in § 3582(c)(1)(A); the one relevant to our appeal is "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). Third, it required the sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." And fourth, it required the district court to exercise its discretion to grant the BOP's motion after considering

the applicable sentencing factors under 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Lightfoot*, 724 F.3d 593, 596–99 (5th Cir. 2013).

The second of these requirements was notoriously thorny. Congress never defined or provided examples of "extraordinary and compelling reasons" that might warrant a reduction. Instead, it delegated that authority to the Sentencing Commission. The Sentencing Reform Act instructed the Commission to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It provided just one restriction: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Ibid.*

The third requirement—consistency with the Commission's policy statements—was illusory. That's because it took the Commission 22 years to issue *any* policy statements under § 3582(c)(1)(A). And even after the Commission issued its first policy statement in 2006, it was "little more than an unenlightening repetition" that "parroted" the statute's language. *Jones*, 980 F.3d at 1104. Like the statute, the policy statement said a court could reduce a prisoner's sentence "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. And like the statute, the policy statement provided that a court could do so if "[e]xtraordinary and compelling reasons warrant the reduction" without defining "extraordinary and compelling reasons." *Ibid.* The only part of § 1B1.13 that did not come from § 3582 was the Commission's commentary. Application note 1 of the commentary articulated four categories of "extraordinary and compelling reasons" that could warrant a sentence reduction: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *Id.* cmt. n.1.

No. 20-40543

B.

In December of 2018, President Trump signed the FSA into law. The FSA made many changes to the United States Code, but it made only one change to the compassionate-release framework in § 3582. *See Brooker*, 976 F.3d at 230.

Before the FSA amendment, the relevant provision of § 3582 read: "[T]he court, upon motion of the Director of the Bureau of Prisons, may reduce [a prisoner's] term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A) (2012). The FSA amended that text to read:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce [a prisoner's] term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A) (2018) (italics indicating amendment). That change was obviously very important. It eliminated the first of the pre-FSA requirements for a § 3582 motion—namely, a motion by the BOP. For the first time, prisoners like Shkambi could move on their own accord.

But the FSA left undisturbed the other three § 3582 requirements. Prisoners like Shkambi still must show "extraordinary reasons"; they still must show that compassionate release is consistent with applicable policy statements from the Commission; and they still must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors. And all of this is made more complicated by the fact that the Commission—which took 22 years to adopt its first policy statement under § 3582(c)(1)(A)(i)—has not yet adopted a new statement to implement the FSA.

The district court nevertheless thought itself bound by the old pre-FSA policy statement that appears in § 1B1.13. That was error for three reasons.

First, the text of § 1B1.13 says it only applies to "motion[s] of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. That makes sense because in 2006 (when the Sentencing Commission issued the policy statement) and in November of 2018 (when the Commission last amended it), the BOP had exclusive authority to move for a sentence reduction. *See Brooker*, 976 F.3d at 231. When Congress enacted the FSA in December of 2018, it gave prisoners authority to file their own motions for compassionate release; but it did *not* strip the BOP of authority to continue filing such motions on behalf of its inmates. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a court may grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant"). So the policy statement continues to govern where it says it governs—on the "motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. But it does not govern here—on the newly authorized motion of a prisoner.

Second, the text of the commentary confirms the limited applicability of § 1B1.13. Application note 4 of the commentary makes clear that a "reduction *under this policy statement* may be granted only upon a motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.4 (emphasis added). That note expressly limits the policy statement's applicability to motions filed by the BOP.

Third, the district court cannot rely on pieces of text in an otherwise inapplicable policy statement. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (refusing to "do some quick judicial surgery on § 1B1.13 . . . [and] assume that what remains . . . applies to defendant-filed as well as BOP-filed motions"). It's true that application note 1 defines "extraordinary and

compelling reasons" by articulating four categories of reasons that could warrant a sentence reduction. But this "text may not be divorced from context." *United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013)); *see also* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). And the context of the policy statement shows that it applies only to motions filed by the BOP. Just as the district court cannot rely on a money-laundering guideline in a murder case, it cannot rely on the BOP-specific policy statement when considering a non-BOP § 3582 motion.

For these reasons, we conclude that neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582. The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue. *See United States v. McGee*, --- F.3d ---, 2021 WL 1168980, at *12 (10th Cir. Mar. 29, 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *McCoy*, 981 F.3d at 284; *Jones*, 980 F.3d at 1111; *Brooker*, 976 F.3d at 234.

The district court's order dismissing for lack of jurisdiction is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.