**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2768
_____

UNITED STATES OF AMERICA

v.

ERIC ANDREWS,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-05-cr-00280-002)
District Judge: Honorable Eduardo C. Robreno
_____

Argued: March 16, 2021
_____

Before: SHWARTZ, PORTER, and MATEY,
*Circuit Judges*.

(Filed: August 30, 2021)

Laurence S. Shtasel
Blank Rome
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

John Gleeson **[Argued]**
Marisa R. Taney
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

    *Counsel for Appellant Eric Andrews*

Robert A. Zauzmer **[Argued]**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    *Counsel for Appellee United States of America*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Eric Andrews is serving a 312-year sentence for committing a series of armed robberies when he was nineteen. After Congress enacted the First Step Act, Andrews filed a compassionate-release motion and argued that his case presented "extraordinary and compelling reasons" warranting

a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i). We will affirm the District Court's denial of Andrews's motion.

I

During a one-month period in 2005, Eric Andrews and a group of his confederates robbed thirteen North Philadelphia businesses at gunpoint. Andrews was charged with the thirteen robberies, conspiring to commit the robberies, and brandishing a firearm during the completed crimes. After trial, a jury found Andrews guilty on all counts and he was sentenced to 312 years' imprisonment: 57 months for his role in the robberies and conspiracy under 18 U.S.C. § 1951, and 3,684 months for brandishing a firearm during a crime of violence under 18 U.S.C. § 924(c). Andrews received such an elevated sentence in large part because, at the time, each additional § 924(c) count carried a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2006) (amended by First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22).[1]

In 2018, Congress changed that by passing the First Step Act. The Act revised § 924(c) so that the 25-year mandatory minimum for subsequent offenses would not apply unless the defendant already had a final conviction for a § 924(c) charge at the time of the offense. *See* First Step Act § 403(a); *United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019) ("[O]nly a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger

---

[1] At the time Andrews was sentenced, 18 U.S.C. § 924(c) provided that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i) (2006) (amended by First Step Act § 403(a)).

3

the 25-year minimum."). Had Andrews been sentenced today, his consecutive convictions for brandishing a firearm would each generate a statutory minimum of 7 years, resulting in a 91-year sentence. But Congress specifically chose not to apply the statutory change to people who had already been sentenced under the old version: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* § 403(b). Because Andrews was sentenced in 2006, he could not receive a reduced sentence under the new sentencing scheme. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020) ("[T]he new § 924(c) mandatory minimum does not apply to defendants initially sentenced before the First Step Act's enactment.").

However, Andrews was still able to move for a modified sentence under 18 U.S.C. § 3582(c)(1)(A). He was able to do so because of another innovation of the First Step Act— prisoner-initiated motions for compassionate release. *See* First Step Act § 603(b). Previously, all motions for compassionate release had to be made by the Director of the Bureau of Prisons. But the First Step Act created an avenue for prisoners to file their own motions in federal court. *Id.*

The First Step Act added the procedure for prisoner-initiated motions while leaving the rest of the compassionate-release framework unchanged. So just like Bureau-initiated motions, a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by "extraordinary and compelling reasons"; (2) "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) supported by the traditional sentencing factors under 18

U.S.C. § 3553(a), to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A).

In support of his motion, Andrews pointed to the recent changes to the § 924(c) mandatory minimums and the duration of his sentence. He also noted his rehabilitation in prison, his relatively young age at the time of his offense, the government's decision to charge him with thirteen § 924(c) counts,[2] and his alleged susceptibility to COVID-19. Andrews claimed that, together, those six reasons were extraordinary and compelling under the compassionate-release statute.

Before the District Court could consider whether the proposed reasons collectively satisfied the extraordinary-and-compelling requirement it first had to determine what "extraordinary and compelling" meant under § 3582(c)(1)(A)(i). The government claimed that the court was bound by a Commission policy statement describing "extraordinary and compelling reasons" as: (1) medical conditions, (2) complications in old age, (3) family circumstances, and (4) "other reasons" as determined by the Director of the Bureau of Prisons. *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018). The court disagreed, concluding that, by its terms, the policy statement applied only to Bureau-initiated motions. *United*

---

[2] Andrews claims that the government's decision to charge him with thirteen § 924(c) counts was an abuse of prosecutorial discretion in two ways: (1) consecutive § 924(c) counts were disproportionally used against black men like Andrews; and (2) he was sentenced much more severely than his co-defendants who cooperated and pleaded guilty, effectively making his 312-year sentence a punishment for exercising his right to go to trial.

*States v. Andrews*, 480 F. Supp. 3d 669, 676 (E.D. Pa. 2020). Indeed, the policy statement begins with the words "[u]pon motion of the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13, and its commentary specifically states that a "reduction under this policy statement may be granted *only* upon motion by the Director of the Bureau of Prisons," *id.* § 1B1.13 cmt. n.4 (emphasis added). The court thus concluded that the policy statement was "inapplicable" to prisoner-initiated motions. *Andrews*, 480 F. Supp. 3d at 677. As a result, the court concluded that it was free to interpret "extraordinary and compelling" for itself and consider reasons beyond the four categories listed in the policy statement. *Id.*

Even so, the District Court noted that its inquiry was not boundless. The inapplicability of the policy statement did not mean, for example, that all of Andrews's proposed reasons fell within the statutory meaning of "extraordinary and compelling." The court concluded that two of the proposed reasons—the duration of Andrews's sentence and the nonretroactive changes to mandatory minimums—could not be extraordinary and compelling as a matter of law. *Id.* at 678–80. The court also concluded that, although it was not bound by the policy statement, the policy statement could still provide helpful guidance in determining what constitutes extraordinary and compelling reasons. *Id.* at 683–84. So, utilizing the text, dictionary definitions, the policy statement,[3] and existing precedent, the court determined that Andrews's four remaining reasons collectively fell short of being extraordinary and

---

[3] In interpreting the policy statement, the court also considered a program statement promulgated by the Bureau of Prisons. *Andrews*, 480 F. Supp. 3d at 685–86.

compelling under the statute. *Id.* at 682–88. Andrews timely appealed.

## II

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We exercise de novo review over the District Court's interpretation of statutes and policy statements. *See Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998). But a grant of compassionate release is a purely discretionary decision. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). We therefore review a district court's decision to deny a compassionate-release motion for abuse of discretion. *Id.* Under the abuse-of-discretion standard, we will not disturb the court's determination unless we are left with "a definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

## III

### A

The first issue is whether the District Court was bound by the Commission's policy statement. We conclude that it was not.

As the District Court noted, the text of the policy statement explicitly limits its application to Bureau-initiated motions. Thus, according to its plain language, the existing

7

policy statement[4] is not applicable—and not binding—for courts considering prisoner-initiated motions. In reaching this conclusion, we align with nearly every circuit court to consider the issue. *See United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1247–48 (11th Cir. 2021).

---

[4] Under the compassionate-release statute, all sentence reductions must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). More specifically, Congress has directed the Sentencing Commission to issue general policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). But the Commission has not yet promulgated a post–First Step Act policy statement describing what should be extraordinary and compelling in the context of prisoner-initiated motions. Though vexing, that temporary anomaly does not authorize this Court to effectively update the Commission's extant policy statement by ignoring the pre-First Step Act language relating to Bureau-initiated motions. *See United States v. Long*, 997 F.3d 342, 358 (D.C. Cir. 2021).

B

That leads us to the second issue: whether, in interpreting and applying the phrase "extraordinary and compelling reasons," the District Court erred. We conclude that it did not.

1

To start, the District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of "extraordinary and compelling reasons." Given that the compassionate-release statute does not define "extraordinary and compelling reasons," the court looked to those resources to give shape to the otherwise amorphous phrase. That was not error. "We look to dictionary definitions to determine the ordinary meaning of a word . . . with reference to its statutory text." *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015). And courts may consider an extrinsic source like the policy statement if, like here, it "shed[s] a reliable light on the enacting Legislature's understanding of [an] otherwise ambiguous term[]." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

But Andrews claims that, because the policy statement is not binding on prisoner-initiated motions, the court had no business looking to it for guidance on the meaning of "extraordinary and compelling reasons." We disagree. The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons. "It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd.*

*v. Newton*, 139 S. Ct. 1881, 1890 (2019) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013)). Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute. *See United States v. Johnson*, 948 F.3d 612, 619 (3d Cir. 2020); *see also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012) ("The clearest application of the prior-construction canon occurs with reenactments: If a word or phrase . . . has been given a uniform interpretation by inferior courts or the responsible agency, a later version of that act perpetuating the wording is presumed to carry forward that interpretation.").

Moreover, the District Court looked to the policy statement's descriptions of extraordinary and compelling circumstances as a guide, not as an ultimate binding authority. *See Andrews*, 480 F. Supp. 3d at 682–84. That is not error. The policy statement's descriptions of extraordinary and compelling circumstances can "guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180. In arriving at that conclusion, we again align with the reasoning of the majority of our sister circuits that have considered the issue. *See McCoy*, 981 F.3d at 282 n.7; *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021); *Gunn*, 980 F.3d at 1180; *Aruda*, 993 F.3d at 802. *But see Shkambi*, 993 F.3d at 392.

2

The District Court also did not err when it concluded that the duration of Andrews's sentence and the nonretroactive changes to mandatory minimums could not be extraordinary and compelling reasons warranting sentence reduction.

We begin with the length of Andrews's sentence. The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance. "[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). "Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). Moreover, considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties. *See Gore v. United States*, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy." (citation omitted)).

The nonretroactive changes to the § 924(c) mandatory minimums also cannot be a basis for compassionate release. In passing the First Step Act, Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced. *See* First Step Act § 403(b). That is conventional: "[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). "What the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021). Interpreting the First Step Act, we must "bear[] in mind the fundamental canon of

11

statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (internal quotation marks omitted) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). And when interpreting statutes, we work to "fit, if possible, all parts" into a "harmonious whole." *Brown & Williamson*, 529 U.S. at 133 (internal quotation marks omitted) (quoting *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)). Thus, we will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute. *See United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) ("Why would the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean to use a general sentencing statute from 1984 to unscramble that approach?").

We join the Sixth and Seventh Circuits in reaching this conclusion. *See Jarvis*, 999 F.3d at 444–46; *Thacker*, 4 F.4th at 576; *see also United States v. Loggins*, 966 F.3d 891, 892–93 (8th Cir. 2020) (district court did not misstate the law in finding "that a non-retroactive change in law did not support a finding of extraordinary or compelling reasons for release"). *But see McGee*, 992 F.3d at 1048 (a nonretroactive change to mandatory minimums cannot, by itself, create extraordinary and compelling circumstances; but nonretroactive changes may be paired with other unique circumstances to create extraordinary and compelling reasons warranting a sentence reduction); *McCoy*, 981 F.3d at 286 (nonretroactive changes to mandatory minimums may create extraordinary and compelling circumstances). But in holding that the statutorily

12

required sentence or Congress's nonretroactive sentencing reductions are not extraordinary and compelling reasons for purposes of § 3582(c)(1)(A), we are not saying that they are always irrelevant to the sentence-reduction inquiry. If a prisoner successfully shows extraordinary and compelling circumstances, the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors. *See Jarvis*, 999 F.3d at 445; *Thacker*, 4 F.4th at 575–76.

C

Finally, we consider whether the District Court abused its discretion in determining that Andrews's four remaining reasons fell short of the extraordinary-and-compelling requirement. Because the court carefully considered the remaining reasons and arrived at a reasoned result, we conclude that the court operated well within its discretion.

The court recognized that Andrews was arrested at a relatively young age and that, since that time, he has taken great strides in his rehabilitation—he regularly attends church, he's had a clean disciplinary record in prison since 2013, and he helped develop a charitable program to benefit the Salvation Army. *Andrews*, 480 F. Supp. 3d at 687. But the court ruled that Andrews's other two proposed reasons—the government's decision to charge him with thirteen firearm counts and his susceptibility to COVID-19—weighed against him because he presented no facts showing that prosecutors abused their discretion and he provided insufficient details about his susceptibility to COVID-19. *Id.* at 686. The court then explained that, although Andrews's age and rehabilitation could both be viewed as extraordinary, those reasons by themselves were insufficiently compelling to warrant a

13

reduced sentence. *Id.* at 687–88. Thus, the court denied Andrews's motion for compassionate release. *Id.* at 688.

Courts wield considerable discretion in compassionate-release cases, and we will not disturb a court's determination unless we are left with a "definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Pawlowski*, 967 F.3d at 330 (alteration in original) (internal quotation marks omitted) (quoting *Oddi*, 234 F.3d at 146). We discern no clear error of judgment here.

\*    \*    \*

For the reasons stated, we will affirm the District Court's order denying Andrews's motion for compassionate release.

14