**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3432
_____

UNITED STATES OF AMERICA

v.

SERDAR TATAR,
                    Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 1-07-cr-00459-005)
District Judge: Honorable Robert B. Kugler

_____

Submitted Under Third Circuit L.A.R. 31.4(a)
June 6, 2022

Before: AMBRO, RENDELL, and FUENTES, <u>Circuit Judges</u>

(Opinion filed: July 15, 2022)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Appellant Serdar Tatar appeals the denial of three post-conviction motions: one motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), another for reconsideration of the denial of that motion, and the third for relief from judgment under Federal Rule of Civil Procedure 60. The District Court did not err in rejecting all three motions. Thus we affirm.

## I. Background

Fourteen years ago, Serdar Tatar was convicted of conspiring to murder members of the U.S. military. The plot began when Tatar and four co-conspirators—his high school friends—became interested in jihad. The friend group often shared videos with one another of jihadist rhetoric and acts of violence. Tatar had applied to be a police officer and hoped to join the U.S. military so he could "kill [American soldiers] from [the] inside." *United States v. Duka*, 671 F.3d 329, 347 (3d Cir. 2011).

In 2006, the group took a trip to a firing range in the Pocono Mountains. There they recorded a video where they shouted, among other things, "jihad in the States." *Id.* at 333–34. When one member went to make a copy of the video, a concerned Circuit City employee turned it over to the local police, who sent it to the FBI. The FBI, in turn, sent two informants to infiltrate the group. Shortly thereafter, the group told one of the informants of a plan to attack Fort Dix, a U.S. Army post in New Jersey. Tatar, a former pizza delivery driver, was familiar with the post because of his many deliveries there, so one informant asked him to get a map for the group. Tatar agreed.

2

Just a few days later though, Tatar reported the informant to a Philadelphia police officer. While he told the officer about the request for the map, he conveniently omitted all other relevant information about the plot and his own involvement in it. At the same time, Tatar moved forward with the plan and handed over the map to the informant. He also reassured the informant he was all-in, saying "[i]t doesn't matter to me, whether I get locked up . . . . Whether I die, don't matter, I'm doing it in the name of Allah." SA 122.

A few weeks later, on December 7, 2006, the FBI interviewed Tatar about the report he made to the Philadelphia police. During this interview, Tatar told the FBI agents he did not give the map to the informant and knew no one else involved in the plot.

The FBI arrested Tatar and other members of the conspiracy after two of them purchased weapons from one of the informants. A jury later convicted Tatar of conspiracy to murder members of the U.S. military. His advisory Guidelines' sentence was life imprisonment. But at sentencing, the District Court varied Tatar's sentence downward to 396 months based on his potential for rehabilitation. We affirmed his conviction and sentence.

Tatar has spent the last decade seeking release. He first moved to vacate his conviction under 28 U.S.C § 2255, which was denied. He then moved for compassionate release under 18 U.S.C. § 3582(c)(1), which was again denied. He promptly sought reconsideration of that denial. This, too, was denied. Lastly, Tatar filed a Rule 60 motion for relief from judgment, which was dismissed. Tatar now appeals the denial of the latter three motions.

3

## II. Analysis

### 1. Motion for Compassionate Release[1]

Federal law allows for compassionate release when a prisoner shows that both "extraordinary and compelling reasons" and the 18 U.S.C. § 3553(a) sentencing factors support an early release. 18 U.S.C. § 3582(c)(1). A district court's decision to grant compassionate release is "purely discretionary," so we review its order for abuse of discretion. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). Under this standard, we will not disturb the Court's determination unless we are left with "a definite and firm conviction" that there was "a clear error of judgment in the conclusion it reached." *Id.* (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

A natural starting place, then, is the District Court's decision. In moving for compassionate release, Tatar insisted his medical conditions (such as his latent tuberculosis, sleep apnea, "chest pains, kidney problems, [and] circulation problems," SA 209–10) made him particularly vulnerable to contracting and suffering serious complications from COVID-19. These medical conditions, he said, were extraordinary and compelling reasons for his early release. Tatar also contended that the § 3553(a) factors supported early release, as he was not a threat to the public and would permanently return to his home country of Turkey.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3582(c)(1)(A) to consider Tatar's motion for compassionate release and his motion for reconsideration. We have jurisdiction to review the denial of these motions under 28 U.S.C. § 1291.

The District Court disagreed. The Court found Tatar's health conditions did "not place him at a significantly greater risk of complications for COVID-19," so he did "not meet the required 'extraordinary and compelling' standard for reduction of his sentence." SA 12. That was likely correct. But we need not definitively decide this issue because the Court did not abuse its discretion in its alternative holding—that the § 3553(a) factors weighed against release. As the Court observed, Tatar "played a crucial role" in the conspiracy for which he was convicted, had "served less than half of his thirty-year sentence," and had "committed an extremely serious crime." SA 12–13. Despite Tatar's protest, these factual findings are not clearly erroneous based on the record. The Court also properly determined that the need for "adequate deterrence and punishment," the "seriousness of Tatar's conduct," and "the need to protect the public" were all factors that "weigh firmly against compassionate release." *Id.* We cannot say the Court abused its discretion in reaching this conclusion.

For similar reasons, the Court did not abuse its discretion by rejecting Tatar's motion for reconsideration. In his renewed motion, Tatar alleged he had contracted COVID-19. This infection, he claimed, when coupled with his other medical issues, placed him at a heightened risk of severe illness from COVID-19. Again, even assuming he met the threshold requirements for seeking reconsideration, nothing in this new motion undermined the Court's reasoning that the § 3553(a) factors weighed against early release. We thus affirm the Court's denial of relief.

5

### 2. Rule 60 Motion

Separate from his motion for compassionate release, Tatar sought relief under Federal Rule of Civil Procedure 60(b).[2]  In this motion, he asked the Court to "set aside the judgment entered . . . on April 29, 2009," (that is, his criminal judgment) based on allegations the Government committed a *Brady* violation by withholding exonerating evidence.  SA 264, 278.  The Government, he said, violated his constitutional rights by omitting or destroying "material evidence" from his December 7, 2006 interview with the FBI.  SA 265–66.  Had the evidence been properly turned over, he insists the "outcome of [his] trial would have been different."  SA 268.

A collateral attack on a federal conviction and judgment normally must be filed as a motion under 28 U.S.C. § 2255.  And once that motion is denied, a prisoner may only file a "second or successive motion" if the "appropriate court of appeals" certifies that the new motion contains: (1) "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"; or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h).  If a prisoner does not receive a certificate of appealability from the court of appeals, a district court lacks jurisdiction to consider the second or successive motion.  *See, e.g.*, *Pridgen v. Shannon*, 380 F.3d 721, 725 (3d Cir. 2004) (citing 28 U.S.C. § 2244(b)).

---

[2] Rule 60(b) allows relief from a final judgment in civil cases for reasons such as "mistake," "excusable neglect," or "fraud."  Fed. R. Civ. P. 60(b)(1), (3).

Litigants may not circumvent these requirements by disguising a second or successive motion as something else, like a motion under Rule 60(b). Indeed, a "Rule 60(b) motion should be treated as a second or successive § 2255 motion if it challenges the defendant's conviction or sentence rather than a procedural error in the prior § 2255 proceeding." *United States v. McKye*, 947 F.3d 1293, 1295 (10th Cir. 2020); *see also Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) (determining a Rule 60(b) motion cannot be used to circumvent § 2244's second or successive requirements if the motion "attacks the federal court's previous resolution of a claim *on the merits*" rather than alleging "some defect in the integrity of the [prior] federal habeas proceedings" (emphasis in original)).

Tatar's Rule 60(b) motion is a clear attempt to relitigate his conviction, not a procedural challenge to his previous § 2255 proceeding. Indeed, the very first page of his motion states he is seeking reconsideration of the District Court's April 29, 2009, judgment—the judgment of conviction and sentence—*not* the Court's February 11, 2016, denial of his motion to vacate under § 2255.[3] Further, the argument raised in the motion— a constitutional challenge to his conviction—goes straight to the merits of his conviction. In this context, the motion simply cannot be construed as raising a procedural mistake in the prior § 2255 case. Tatar's motion thus was an unauthorized second or successive § 2255 motion, and the Court lacked jurisdiction to consider it.[4]

---

[3] This is all the more obvious from the fact that Tatar filed his Rule 60(b) motion on the docket of his criminal case, *United States v. Tatar*, No. 1:07-cr-00459 (D.N.J. filed June 5, 2007), *not* on the docket of his civil § 2255 case, *Tatar v. United States*, No. 1:13-cv-03317 (D.N.J. filed May 28, 2013).

[4] In his motion, Tatar also invoked Rule 59(a)(1) which allows the Court to "grant a new trial on all or some of the issues" if the motion for a new trial is "filed no later than 28 days

* * * * *

For the reasons above, we affirm the District Court's denial of Tatar's motion for compassionate release and his motion to reconsider that order.  Because the Court lacked jurisdiction to consider Tatar's Rule 60(b) motion (which was in fact an unauthorized successive § 2255 motion), we also affirm dismissal of that motion.

---

after the entry of judgment."  Fed. R. Civ. P. 59(a)(1), (b).  Tatar cites no authority extending Rule 59(a)(1) to the criminal context.  And his time to file such a motion ran out long ago; judgment was entered against him more than a decade ago.  He also cited Rule 60(d)(3), but that only states that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  As the Government observes, this rule "does not create any affirmative mechanism for relief."  Gov't Br. at 24.