**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1246
_____

UNITED STATES OF AMERICA

v.

MICHAEL KRAMER,
                                          Appellant
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-11-00207-001)
District Judge: Honorable David S. Cercone
_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 7, 2023

Before: RESTREPO, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: January 26, 2024)


_____

OPINION[*]
_____


---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SCIRICA, *Circuit Judge*.

Michael Kramer, proceeding pro se, appeals the District Court's order denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The District Court determined Kramer failed to establish an extraordinary and compelling reason to warrant granting the motion. On appeal, Kramer contends the District Court improperly considered his medical issues and the nature of his underlying offenses. We find the District Court did not abuse its discretion and will affirm.

I.[1]

In 2014, Kramer was sentenced to 240 months' imprisonment upon pleading guilty to armed bank robbery, possession of a firearm by a convicted felon, and using and carrying a firearm during and in relation to a crime of violence. In 2020, Kramer filed the instant motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Kramer contended his medical conditions, along with increased health risks posed by the COVID-19 pandemic, constituted "extraordinary and compelling reasons" warranting a sentence reduction. App. 90. Specifically, Kramer pointed to his hypertension and obesity as factors putting him at an increased risk of health complications were he to contract COVID-19. Moreover, Kramer contended his institutional behavior and plan for reintegration supported a finding that a sentence reduction was warranted under the sentencing factors laid out in 18 U.S.C. § 3553(a).

The District Court denied Kramer's motion. It determined Kramer's medical

---

[1] We write solely for the parties and so only briefly recite the essential facts.

condition did not constitute an extraordinary and compelling reason to warrant a sentence reduction, particularly given the Bureau of Prisons' ("BOP") ongoing COVID-19 response and the availability of vaccines. The District Court also weighed the 18 U.S.C. § 3553(a) sentencing factors and found a sentence reduction was not warranted given the nature of Kramer's underlying offenses. Upon denial of this motion, Kramer timely appealed.

II.[2]

As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) permits inmates, as well as the BOP, to initiate motions requesting sentence reductions. Pub. L. No. 115-391, 132 Stat. 5194. In order to prevail on such a motion, an inmate must demonstrate an extraordinary and compelling reason justifying a sentence reduction. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). In determining what constitutes an extraordinary and compelling reason, the District Court may consider policy statements generated by the U.S. Sentencing Commission. *See id.* at 259–60. But a court is not bound by the Commission's policy statements, and the policy statement applicable to Kramer's case only applies to BOP-initiated motions for compassionate release.[3] The Commission's policy statement includes, among others, medical conditions

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[3] The Sentencing Commission has adopted an amendment to USSG §1B1.13, with an effective date of November 1, 2023, to include defendant-initiated motions for compassionate release. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (May 3, 2023). The amendment also expands extraordinary and compelling reasons to include medical conditions that subject an inmate to increased risk of exposure to an infectious disease (like COVID-19). *Id.* However, this amendment does not apply

3

that "substantially diminish[] the ability of the defendant to provide self-care" in the list of extraordinary and compelling reasons to grant compassionate release. *See* USSG §1B1.13.

In addition to establishing an extraordinary and compelling reason, the inmate must show that a reduction is "supported by the traditional sentencing factors under 18 U.S.C. § 3553(a)." *Andrews*, 12 F.4th at 258. These factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect seriousness of the offense, . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

We review the District Court's decision to deny Kramer's motion for compassionate release for an abuse of discretion. *See United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). Accordingly, we will uphold the court's order "unless there is a definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)). To prevail on appeal, Kramer must demonstrate the court abused its discretion both in declining to find an extraordinary and compelling reason as well as in its application of the § 3553(a) factors.

---

retroactively. *See* U.S. Sentencing Commission, Rules of Practice & Procedure §4.1A (2016) ("Generally, promulgated amendments will be given prospective application only.").

A.

The District Court did not abuse its discretion in finding no extraordinary and compelling reason to warrant a sentence reduction for Kramer. The court acknowledged Kramer's medical conditions and the related risks of potential complications if he were to contract COVID-19 but ultimately determined these conditions did not rise to the level of an extraordinary and compelling reason. We have previously noted that the "mere existence of COVID-19 in society" does not constitute an extraordinary and compelling reason, especially when viewed in the light of BOP's "extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The court balanced Kramer's medical needs against BOP's ongoing COVID-19 response and found Kramer did not meet his burden to demonstrate an extraordinary and compelling reason for sentence reduction. Accordingly, given the "considerable discretion in compassionate-release cases," the District Court did not abuse its discretion, having appropriately considered Kramer's medical conditions alongside BOP's ongoing COVID-19 response. *See Andrews*, 12 F.4th at 262.

B.

Nor did the District Court abuse its discretion when it determined the § 3553(a) sentencing factors did not weigh in favor of a sentence reduction. Kramer robbed a bank at gunpoint and accordingly, the District Court described the nature of Kramer's offense having "a distinct aura of violence." App. 29. The District Court also considered Kramer's criminal history and noted substance abuse. It stressed the seriousness of Kramer's offense and the need to deter others from committing similar crimes, as well as

a continuing need to protect the public from Kramer. We find no "clear error of judgment" in the District Court's reasonable consideration of the § 3553(a) factors. *See Pawlowski*, 967 F.3d at 330.

Moreover, the District Court observed Kramer's 240 months' sentence was already "*meaningfully below* the guideline range" of 272 to 319 months. App. 30. We have previously observed it is not unreasonable for a district court to consider whether granting compassionate release would result in a substantial reduction in sentence. *Pawlowski*, 967 F.3d at 331.

Relying on the Supreme Court's recent decisions in *Borden v. United States*, 597 U.S. 481 (2021), and *Concepcion v. United States*, 142 S. Ct. 2389 (2022), Kramer contends the District Court erred when it failed to consider intervening changes in law in its analysis of the § 3553(a) factors. But Kramer's reliance on *Borden* and *Concepcion* is misplaced. Kramer contends *Borden* changes his status as a career offender and argues the District Court should have considered this change in law in weighing the § 3553(a) factors. But even if Kramer is correct in asserting a change in career offender status under *Borden*, *Concepcion* does not compel courts to consider intervening changes of law but rather allows courts to exercise their discretion to reduce a sentence under the First Step Act. *See Concepcion*, 597 U.S. at 501–02. Moreover, we have recently reaffirmed that nonretroactive changes in sentencing laws are not, by themselves, extraordinary and compelling reasons warranting sentence reduction. *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023) ("[O]ur holding in *Andrews* remains undisturbed.").

III.

Courts have "considerable discretion in compassionate-release cases." *Andrews*, 12 F.4th at 262. For the foregoing reasons, we find the District Court did not abuse its discretion when it determined Kramer was not entitled to a sentence reduction. Accordingly, we will affirm the judgment of the District Court.

RESTREPO, *Circuit Judge*, concurring.

I join Judge Scirica's well-crafted opinion in full and write separately only to underline several points.

Although "[a] grant of compassionate release is a purely discretionary decision," *United States v. Stewart*, 86 F.4th 532, 534 (3d Cir. 2023), eighty-four percent of the 30,414 motions for compassionate release filed nationwide between October 2019 and June 2023 were denied. U.S. Sent'g Comm'n, Compassionate Release Data Rep. 3 tbl.1 (Sept. 2023). In our Circuit, less than seven percent of the 178 motions filed in district courts over a recent nine-month period were granted. *Id.* at 6 tbl.3. These rates are understandable when one considers that, to obtain a sentence reduction, a movant must both articulate an extraordinary and compelling reason for relief that is consistent with applicable policy statements from the Sentencing Commission *and* satisfy the concerns of 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

Low grant rates also make sense when one understands that, until very recently, district courts were required to develop this new area of federal sentencing law with no updated guidance from the Sentencing Commission. *See United States v. Dixon*, 648 F.3d 195, 200–01 (3d Cir. 2011) (holding that courts must follow the Fair Sentencing Act of 2010 instead of the earlier statutory framework until the Sentencing Commission provides updated Guidelines). From 2018 to 2022, the Sentencing Commission lacked a quorum of voting members and was unable to carry out its statutorily assigned duties, including producing a policy statement regarding prisoner-initiated motions for compassionate release under the First Step Act. *See Guerrant v. United States*, 142 S. Ct. 640, 641 (2022)

1

(statement of Sotomayor, J., joined by Barrett, J, respecting the denial of certiorari) ("I hope in the near future the Commission will be able to resume its important function in our criminal justice system."). Absent a policy statement recognizing the purposes of the First Step Act as it affected the "other [extraordinary and compelling] reasons" for compassionate release, *United States v. Andrews*, 12 F.4th 255, 258–59 (3d Cir. 2021), it also makes perfect sense that judges—people for whom moderation is a lodestar—would err largely on the side of caution when it came to granting these sensitive motions.

And yet for nearly five-thousand people nationwide, federal judges have extended this form of relief. U.S. Sent'g Comm'n, Compassionate Release Data Rep. 3 tbl.1 (Sept. 2023). To do so, they have cited a wide variety of extraordinary and compelling reasons justifying sentence reductions. *See, e.g.*, *United States v. Martinez Encinias*, No. 13-CR-2225-MV, 2023 WL 4578452 (D.N.M. July 18, 2023) (unanticipated harshness of pandemic-era incarceration); *United States v. Belin*, No. 10-CR-2213-MV, 2023 WL 3867751 (D.N.M. June 7, 2023) (inadequate provision of medical care in custody); *United States v. Herrera*, No. 17 Crim. 415 (PAC), 2023 WL 3614343 (S.D.N.Y. May 24, 2023) (victim of sexual assault by correctional officer); *United States v. Ramos*, No. 03-cr-315 (ERK), 2023 WL 1766279 (E.D.N.Y. Feb. 2, 2023) (saved life of correctional officer); *United States v. Rodriguez*, No. 19-CR-4693-GPC, 2023 WL 1486147 (S.D. Cal. Feb. 2, 2023) (newborn baby); *United States v. Harrison*, Crim. No. CCB-06-0478, 2023 WL 403029 (D. Md. Jan. 25, 2023) (current maturity); *United States v. Rogers*, No. CR-13-15-BU-BMM, 2023 WL 121224 (D. Mon. Jan. 6, 2023) (strong family support); *United States v. Davila*, 584 F. Supp. 3d 1001 (D. Kan. 2022) (rehabilitation in combination with other

factors); *United States v. Marshall,* 604 F.Supp.3d 277 (E.D. Pa. 2022) (long-term solitary confinement); *United States v. Londono*, No. 05-cr-495 (JGK), 2022 WL 17905065 (S.D.N.Y. Dec. 23, 2022) (noncitizen unable to make use of release options); *United States v. Bernhardt*, No. 96-cr-203-WJM, 2022 U.S. Dist. LEXIS 203529 (D. Colo. Nov. 8, 2022) (declining health); *United States v. Kanui*, Crim. No. 13-00667 JMS, 2022 WL 4120784 (D. Haw. Sept. 9, 2022) (personal hardships); *United States v. Glover*, Crim. No. 8:07-cr-00960-JMC-15, 2022 WL 3025753 (D.S.C. Aug. 1, 2022) (post-sentencing change of law); *United States v. Golding*, No. 05-cr-538 (JSR), 2022 WL 2985014 (S.D.N.Y. July 27, 2022) (youth at time of offense); *United States v. Payne*, No. 94-CR-150-TCK, 2022 WL 2257044 (N.D. Okla. June 23, 2022) (disparity in sentences among codefendants); *United States v. Hudec*, Crim. No. 4:91-1-1, 2022 WL 2118974 (S.D. Tex. June 9, 2022) (amount of time spent incarcerated); *United States v. Burr*, No. 16-CR-04081-SRB-1, 2022 WL 989225 (W.D. Mo. Mar. 31, 2022) (miscalculation of the Guidelines resulting in a two-year delay in plea negotiations); *United States v. Cleveland*, No. 3:13-CR-479-K-1, 2022 WL 562829 (N.D. Tex. Feb. 23, 2022) (good conduct and lack of disciplinary history in prison); *United States v. Watkins*, No. 10-20545, 2022 WL 130977 (E.D. Mich. Jan. 12, 2022) (pressured into plea agreement); *United States v. Rollins*, 540 F. Supp. 3d 804 (N.D. Ill. 2021) (disparity between individual's sentence and the average sentence for the same offense); *United States v. Meeks*, No. 1:97-cr-00169-4, 2021 WL 9928774 (N.D. Ill. Dec. 15, 2021) (extraordinary acts of character, including saving the life of a fellow prisoner); *United States v. Pardo*, Crim. No. 1:14-cr-376 (RDA), 2021 WL 5447658 (E.D. Va. Nov. 22, 2021) (high-risk pregnancy); *United States v. Howard*, Crim. No. CCB-11-494, 2021

WL 5416950 (D. Md. Nov. 18, 2021) (disparity between actual sentence and likely sentence for same conduct committed today); *United States v. Pham*, No. 1:99-cr-0100, ECF No. 96 (E.D. Va. Aug. 24, 2021) (old age, exceptional employment history); *United States v. Jordan*, No. 2:13-cr-00221-APG-CWH, 2021 WL 3612400 (D. Nev. Aug. 13, 2021) (lack of serious criminal history); *United States v. Suggs*, No. 3:99cr244 (JBA), 2021 WL 2661874 (D. Conn. June 28, 2021) (history of drug addiction); *United States v. Shobe*, No. 11-CR-0149-003-CVE, ECF No. 376 (N.D. Okla. June 24, 2021) (mandatory minimum sentences deprived the sentencing court an opportunity to exercise discretion based on totality of circumstances); *United States v. Jackson*, No. 3:90-cr-85-MOC-DCK, 2021 WL 2226488 (W.D.N.C. June 1, 2021) (robust release plan); *United States v. Evans*, No. 2:01-CR-603-DAK, 2021 WL 1929798 (D. Utah May 13, 2021) (childhood abuse); *United States v. Edwards*, Crim. No. 14-323-4, 2021 WL 1105341 (E.D. Pa. Mar. 23, 2021) (caretaking responsibilities); *United States v. Nafkha*, No. 2:95-CR-00220-001-TC, 2021 WL 83268 (D. Utah Jan. 8, 2021) (length of sentence); *United States v. Adeyemi*, 470 F.Supp.3d 489 (E.D. Pa. 2020) (mitigating circumstances of the offense); *United States v. Derricoatt*, No. 1:11-cr-91-10, 2020 WL 5629095 (N.D. Ohio Sept. 21, 2020) (lack of access to necessary substance abuse services); *United States v. Smith*, Crim. No. 9-187, 2020 WL 4047485 (W.D. Pa. July 20, 2020) (could not participate in addiction treatment program while incarcerated); *United States v. Blye*, No. CR15-348RSL, 2020 WL 3064225 (W.D. Wash. June 9, 2020) (would lose parental rights if not released).

Considering the myriad of extraordinary and compelling reasons that that district courts have used to justify sentence reductions prior to updated guidance from the

4

Sentencing Commission, I was struck by the fact that the parties here are litigating an issue—whether Mr. Kramer's susceptibility to COVID-19 constituted an extraordinary and compelling reason—that has largely receded (much like the pandemic itself) as a basis for authorizing relief.[1] A closer look at the lower court docket explains why.

Mr. Kramer is forty-year-old man serving a twenty-year prison sentence for a 2011 armed robbery of a bank that temporarily netted him $1,091. In November of 2020, he filed a pro se motion for compassionate release, asking "for a chance to do better" and arguing that preexisting medical conditions (including having had a portion of his left lung removed) put him at heightened risk for severe illness or death from COVID-19. App. 42. The District Court appointed counsel for Mr. Kramer, and a counseled motion was filed on his behalf on January 28, 2021. The Court finally ruled on his underlying motion—a motion premised on the urgency of the threat to his life—*over two years later*.

A lot can happen in two years. Let us not forget that of the 317 people who died excruciating COVID-19-related deaths in Bureau of Prisons custody, *see, e.g.*, *Martinez Encinias*, 2023 WL 4578452, at *3–6; *National COVID-19 Statistics*, The COVID Prison Project, https://covidprisonproject.com/data/national-overview/ (July 3, 2023), at least twenty-nine moved for time-sensitive compassionate release and died *before* their judges had ruled on their motions. *Compassionate Release*, Iowa College of Law, https://law.uiowa.edu/compassionate-release (Jan. 1, 2022). While we might be inclined to

---

[1] Although our 2020 decision in *Raia* did not "foreclose a possible claim of onerous conditions in the midst of a rampant pandemic," *Stewart*, 86 F.4th at 536, it made it clear that "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

think, "no harm, no foul," seeing as Mr. Kramer did not end up dying of COVID-19, his case should nonetheless serve as a reminder of the risks we run when we do not dispense justice fairly *and* expeditiously. Our work often requires difficult judgment calls, but deciding and living with the consequences will always, in my view, outweigh abstaining until it becomes too late.